## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| BRADEN RENICK *et al.* | * | |
| | * | |
| v. | * | Civil No. CCB-12-1627 |
| | * | |
| DANIEL SPERAU *et al.* | * | |
| | * | |

\* \* \* \* \* \*

### MEMORANDUM

This suit arises from the purchase of a house with lead paint hazards.  Plaintiffs Braden and Rebecca Renick purchased the real property from defendants Daniel and Melissa Sperau. Defendant ELTG, LLC is a title company and real property settlement agent that represented the Speraus in the sale of their home.  The Renicks filed a complaint in state court against the Speraus alleging violations of the Residential Lead-Based Paint Hazard Reduction Act ("RLPHRA"), 42 U.S.C. § 4852d (Count I), intentional misrepresentation (Count II), and negligent misrepresentation (Count III), and against ELTG alleging negligent misrepresentation (Count IV).  ELTG has filed a crossclaim against the Speraus for indemnity and contribution. The Speraus filed an amended third-party complaint against their realtor, Yerman, Whitman, Gaines & Conklin Realty ("YWGC"), and its agent Melissa Coyne (collectively the "Agents") for indemnity, contribution, and violation of the RLPHRA.

Now pending are the Speraus' motion to dismiss or to stay and for contractual costs and fees (ECF No. 11), the Renicks' motion to strike defendant ELTG's reply to response to motion to dismiss and notice of consent and joinder to the Speraus' motion (ECF No. 25), the Speraus' motion to dismiss ELTG's cross claim (ECF No. 26), and the Agents' motion to dismiss the Speraus' amended third-party complaint or for summary judgment and request for hearing (ECF

No. 43).[1]  The issues have been fully briefed, and no hearing is necessary.  *See* Local Rule 105.6.

For the following reasons, the Speraus' motion to dismiss or to stay will be denied; the Renicks'

motion to strike ELTG's reply with respect to that motion will be denied as moot; the Agents'

motion will be granted in part and denied in part; and the Speraus' motion to dismiss ELTG's

crossclaim will be granted in part and denied in part.

### Background

In the summer of 2011, the Renicks purchased a home located at 411 Woodlawn Road,

Baltimore, Maryland from the Speraus.  (Renicks' Opp. at 2, ECF No. 20; Speraus' Reply at 1,

ECF No. 22.)  The Speraus had owned the home since at least 2005.  (Compl. ¶ 6, ECF No. 2;

Speraus' Opp. to Mot. to Dismiss Am. Third-Party Compl. [hereinafter Speraus' Opp.] at 7, ECF

No.  44.)  The contract of sale, dated February 19, 2011, was made by and between the Speraus

as sellers and the Renicks as buyers pursuant to a Maryland Association of Realtors Maryland

Residential Contract of Sale.  (Speraus' Mot. to Dismiss or Stay ¶ 2, ECF No. 11; *see also*

Notice to Buyer and Seller[2], Agents' Mot. to Dismiss Am. Third-Party Compl. or for Summ. J.

[hereinafter Agents' Mot.], Ex. 6, ECF No. 43-9.)  Defendant ELTG, acting as the Speraus'

agent, conducted a title search and the settlement for the sale of the property, which occurred on

July 15, 2011.  (Compl. ¶¶ 13-14; ELTG Crossclaim ¶ 4.)

As sellers of the property, the Speraus completed a "Disclosure of Information on Lead-

Based Paint and/or Lead-Based Paint Hazards Federal and Maryland State Lead Warning

Statement" ("Disclosure Statement") affirming that they had no knowledge of lead-based paint

---

[1] ELTG's motion for summary judgment against the Renicks on the negligent misrepresentation claim in Count IV of the original complaint and request for a hearing is also pending but no reply has yet been filed.  (ECF No. 53.)  It will be addressed in the near future.
[2] Although the Renicks do not acknowledge the contract was made pursuant to a Maryland Association of Realtors contract of sale, the Notice to Buyer and Seller included among the contract documents bears the imprimatur of the association at the bottom of the page.

or lead-based paint hazards in the housing and had received no reports or records pertaining to

such hazards.  (Compl. ¶ 15; Sperau' Opp. at 7; *see also* Disclosure Statement, Agents' Mot.,

Ex. 5, ECF No. 43-8.)  The sale contract included a mediation provision stating in part,

> Buyer and Seller agree that neither party shall commence any action in any court
> regarding a dispute or claim arising out of or from this contract or the transaction which
> is the subject of this contract, without first mediating the dispute or claim, unless the right
> to pursue such action or the ability to protect an interest or pursue a remedy as provided
> in this Contract, would be precluded by the delay of the mediation.  In the event the right
> to pursue such action, or the ability to protect an interest or pursue a remedy would be
> precluded by the delay, Buyer or Seller may commence the action only if the initial
> pleading or document commencing such action is accompanied by a request to stay the
> proceeding pending the conclusion of the mediation.  If a party initiates or commences an
> action in violation of this provision, the party agrees to pay all costs and expenses,
> including reasonable attorneys' fees, incurred by the other party to enforce the obligation
> as provided herein.  The provisions of this paragraph shall survive closing and shall not
> be deemed to have been extinguished by merger with the deed.

(Contract ¶ 34 as cited in Sperau Aff. 1[3] ¶ 4, ECF No. 11-1.[4])

The Renicks allege that the Speraus received two letters from the Baltimore City Health

Department, dated March 31, 2006 and April 15, 2009, notifying them that there were lead

hazards on the property.  (Compl. ¶¶ 8-10.)  They also claim that the Speraus failed to abate the

lead hazards on the property and that Baltimore City entered a written notice of the outstanding

violation in the municipal records, which constituted an encumbrance on the title.  (*Id.* ¶ 11.)

The Renicks allege that the Speraus failed to notify them of the lead hazards or the Health

Department's notices.  (*Id.* ¶ 16.)  On or about August 31, 2011, the Renicks, who had inhabited

the house with their children, received a "violation notice and order to remove lead hazard" from

---

[3] Because neither of Daniel Sperau's affidavits is dated, the court will refer to his first affidavit,
attached to the Speraus' motion to dismiss or stay, as "Sperau Aff. 1" (ECF No. 11-1) and his
second affidavit, attached to the Agents' motion (ECF No. 43-4) and the Speraus' opposition to
that motion (ECF No. 44-2), as "Sperau Aff. 2."
[4] No party has submitted a full copy of the actual sale contract, but the Renicks have not disputed
the content of the mediation provision as represented by the Speraus.

the Baltimore City Health Department listing the lead hazards identified in the March 31, 2006

notice. (*Id.* ¶ 17.)

The Speraus, however, claim they never received the warning letters from the Health

Department. (Sperau Aff. 2 ¶ 32, Speraus' Opp., Ex. A-1, ECF No. 44-2.) They concede that

"Mr. Sperau followed the Agents' instructions and inadvertently initialed items on the Disclosure

Statement indicating the absence of lead based paint in the House" on February 19, 2011.

(Speraus' Opp. at 7; *see* Sperau Aff. 2 ¶ 28.) They claim, however, that they were not aware of

any outstanding lead paint violation at that time. (Sperau Aff. 2 ¶ 32; Am. Third-Party Compl.

¶¶ 19-20.) They concede that they had in fact discovered lead paint in the house when they

undertook renovations starting in 2005. (Sperau Aff. 2 ¶¶ 4-6.) They state that upon notification

the Baltimore City Health Department opened a file, and an official visited the Speraus with

instructions for mitigating lead exposure during renovation. (Sperau Aff. 2 ¶ 7.) In 2009 after

renovation was complete, Karen DiFerinando, an inspector with the Baltimore City Health

Department, visited the house and advised the Speraus that her supervisor had instructed her to

close the file. (Sperau Aff. 2 ¶¶ 7, 10.)

The Speraus claim they "provided [Coyne] with copies of receipts, invoices and other

contractor documentation relating to the past renovation of the House with the instruction that

such documents be given to the Renicks and their agent who had requested copies." (Sperau Aff.

2 ¶ 16.) At least one of these documents "clearly reflected the presence of pre-existing lead paint

at the House." (*See* Sperau Aff. 2 ¶ 8.) Furthermore, the Speraus allege that the existence of

lead paint in the house built in 1922 "was either known or should be known by any reasonably

competent real estate agent listing or selling houses in Baltimore City." (Speraus' Opp. at 7.)

The Agents contend that Coyne never received documentation of house renovations and lead hazards from the Speraus.  (Coyne Aff. ¶ 4, Agents' Mot., Ex. 2, ECF No. 43-5.)

The Renicks claim they have or will suffer damages in the abatement of the lead hazards, securing substitute housing while the hazards are abated, and emotional distress because of their concern for their health and well-being and that of their children.  (Compl. ¶ 18.)  They filed the instant action in the Circuit Court for Baltimore City.  The Speraus filed an answer in that court and removed the action to the United States District Court for the District of Maryland where they filed a third-party complaint against their Agents in the transaction.  (*See* Answer, ECF No. 4; Removal Notice, ECF No 1; Third-Party Compl. 10.)  Defendant ELTG filed a crossclaim against the Speraus.  (Crossclaim, ECF No. 23.)

## Legal Standard

### A.  Rule 12(b)(6) Dismissal

In reviewing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court accepts as true all well-pleaded allegations and views the complaint in the light most favorable to the plaintiff.  *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court, however, is not required "to accept as true a legal conclusion couched as a factual allegation."  *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 1960 (2012) (quoting *Iqbal*, 556 U.S. at 678) (internal quotations omitted).

The court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed. *Philips*, 572 F.3d at 180; *CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Additionally, a federal court may take judicial notice of documents from prior state court proceedings and other matters of public record in conjunction with a Rule 12(b)(6) motion to dismiss without converting it into a motion for summary judgment. *Philips*, 572 F.3d at 180 (citing *Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986)); *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009); *see also* Fed. R. Evid. 201 (Judicial Notice of Adjudicative Facts).

## B.  Rule 56 Summary Judgment

A court may properly award summary judgment when the record shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). A material fact is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute about a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* When reviewing a motion for summary judgment, the court must look at the facts and inferences drawn therefrom in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

While the burden is on the moving party to demonstrate the absence of any genuine issue of material fact, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970), a "mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). The non-moving party may not merely rest upon allegations or denials in

pleadings but must, by affidavit or other evidentiary showing, set out specific facts showing a

genuine issue remains for trial.  Fed. R. Civ. P. 56(c)(1)(A).  A court should enter summary

judgment where a non-moving party fails to make a sufficient showing to establish the elements

essential to the party's claim and on which the party will bear the burden of proof at trial.  *See*

*Celotex*, 477 U.S. at 322.  "By its very terms, this standard provides that the mere existence of

*some* alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no *genuine* issue of *material*

fact."  *Anderson*, 477 U.S at 247-48.

      If there is insufficient evidence for a reasonable jury to render a verdict in favor of the

non-moving party, there is no genuine issue of material fact, and summary judgment may be

granted.  *See id.* at 248.  A party cannot create a genuine dispute of material fact merely through

speculation and conjecture.  *Deans v. CSX Transp. Inc.*, 152 F.3d 326, 330-31 (4th Cir. 1998).

Summary judgment is inappropriate, however, if there exist factual issues "that properly can be

resolved only by a finder of fact because they may reasonably be resolved in favor of either

party."  *Anderson*, 477 U.S. at 250; *see JKC Holding Co. v. Washington Sports Ventures, Inc.*,

264 F.3d 459, 465 (4th Cir. 2001).

## Analysis

### A.  Speraus' Motion to Dismiss or to Stay

      The Speraus claim in their motion to dismiss or stay the proceedings that the Renicks

failed to submit their claims to mandatory mediation through the Maryland Association of

Realtors prior to initiation of the lawsuit as required by the contract of sale.  (Speraus' Mot. to

Dismiss or Stay ¶ 5.)  They argue that the case should be dismissed because the Renicks failed to

satisfy a condition precedent to filing this action.  (*Id.* ¶¶ 5-6.)  In the alternative, the Speraus

argue that the action should be stayed pending the completion of mediation before the Maryland

Association of Realtors.  (*Id.* at 3.)

The Renicks do not dispute the existence or applicability of the mandatory mediation

clause in the sale contract.  (*See* Sperau Aff. 1 ¶ 4.)  That clause provides that the parties, if they

believe that filing an action before mediating is the only way to protect their interest or pursue a

remedy, "may commence the action only if the initial pleading or document commencing such

action is accompanied by a request to stay the proceeding pending the conclusion of the

mediation."  (*Id.*)  The complaint filed by the Renicks in the state court is accompanied by no

such request or mention of mediation.  (*See generally* Compl.[5])

When the unambiguous intent expressed in the sale contract is for the parties to submit

claims to mediation before bringing suit and they fail to do so, the claims may be subject to

dismissal.  *See Bill Call Ford, Inc. v. Ford Motor Co.*, 48 F.3d 201, 208 (6th Cir. 1995) (holding

franchisee's failure to seek mediation barred claim that franchisor did not adequately reimburse

franchisee for warranty repairs).  The provision in this case, however, contemplates mediation

while the suit is pending.

Although the Renicks violated the mandatory mediation provision of the sale contract by

filing this action without requesting a stay pending completion of mediation, the court agrees

with the Renicks' argument that, after the unsuccessful participation of the parties in a settlement

conference with a magistrate judge, a stay in the district court proceedings pending further

mediation would be futile.  The contractual provision has been complied with in substance, and,

accordingly, the court will deny the Speraus' motion to dismiss or stay the proceedings.

---

[5] The court also takes judicial notice of the state court docket and finds no indication of a request
by the Renicks to stay proceedings.

**B. Renicks' Motion to Strike ELTG's Reply**

Because the court will deny the Speraus' motion to dismiss or stay, the Renicks' motion

to strike ELTG's reply with respect to that motion will be denied as moot.

**C. Agents' Motion to Dismiss Amended Third-Party Complaint or for Summary Judgment**

In an amended third-party complaint, the Speraus assert four counts against their Agents,

YWGC and Coyne: indemnity (Count I), indemnity – active/passive (Count II), contribution

(Count III), and violation of RLPHRA, 42 U.S.C. §§ 4852d *et seq.* (Count IV). (Am. Third-

Party Compl. at 1, ECF No. 40.) They claim that YWGC has both primary liability and

vicarious liability for Coyne's actions as YWGC's employee and agent. (*Id.* ¶ 45.) The Agents

move to dismiss all counts of the amended third-party complaint or for summary judgment.

(Agents' Mot. ¶ 7, ECF No. 43.) The Speraus respond requesting the court deny the Agents'

motion and enter summary judgment on the Speraus' behalf as the non-moving party. (Speraus'

Opp. at 27; *see* Fed. R. Civ. Pro. 56(f)(1).)

*1. Speraus' Indemnity Claims*[6]

The Speraus seek indemnity on a tort-based theory of implied indemnification as they

allege no express or implied contractual indemnification. Consistent with the equitable principle

of unjust enrichment, there can be a tort-based right to indemnification "when there is a great

disparity in the fault of two tortfeasors, and one tortfeasor has paid for a loss that was primarily

the responsibility of the other." *See Int'l Surplus Lines Ins. Co. v. Marsh & McLennan, Inc.*, 838

F.2d 124, 127 (4th Cir. 1988) (citations omitted). Under the active-passive negligence theory, "a

party is only entitled to indemnification when the party's actions, although negligent, are

---

[6] Although the Speraus assert two separate indemnity counts in the third-party complaint, their opposition to the Agents' motion treats these as one claim; so will the court. (*See* Speraus' Opp. at 17-18.)

considered to be passive or secondary to those of the primary tort-feasor." *Bd. of Trs. of Baltimore Cnty. Cmty. Coll. v. RTKL Assocs., Inc.*, 559 A.2d 805, 811 (Md. App. 1989) (citing *Pyramid Condo. Ass'n v. Morgan*, 606 F. Supp. 592, 596 (D. Md. 1985)). Indeed, "one guilty of active negligence cannot obtain tort indemnification." *Franklin v. Morrison*, 711 A.2d 177, 187 (Md. 1998). In *Pyramid* the court granted a motion to dismiss a third-party complaint seeking indemnity based on the active-passive negligence distinction because the claims by the tort plaintiff against the third-party plaintiff were based on facts which, if proved, would constitute active acts of negligence and intentional torts. *Pyramid*, 606 F. Supp. at 596. A third-party plaintiff, who cannot possibly be held liable under any passive negligence theory under the original complaint, cannot seek indemnity. *See RTKL Assocs.*, 559 A.2d at 811.

In this case, the Speraus as third-party plaintiffs may not seek indemnification from third-party defendant Agents, or any other party, if they may themselves be found liable only for actively negligent acts or omissions. The Renicks' original complaint claims the Speraus are liable for violations of the RLPHRA, intentional misrepresentation, and negligent misrepresentation in conjunction with the sale of their house. (Compl. ¶¶ 19-52.) To be found liable under any of these counts, the Speraus must be found to have committed active negligence, i.e. initialing affirmative statements on the Disclosure Statement and thereby affirmatively representing that no lead paint hazards existed in the house. (Compl. ¶¶ 15-16.)

The Restatement (Second) of Torts § 886B provides that indemnity may be granted in cases where the "indemnitee acted pursuant to directions of the indemnitor and reasonably believed the directions to be lawful." Restat. (2d) Torts § 886B(2)(b) (1979). Daniel Sperau's signing and initialing of the contract and Disclosure Statement at the direction of Coyne may seem to fit this category. It is not reasonable, however, for Sperau to sign a contract provision

without first reading and agreeing to its terms.  Furthermore, comments to § 886B(2)(b) specify

that the clause applies primarily to the action of an agent following the direction of his principal

and similar situations.  *Id.*  Sperau had no agent-like duty to follow Coyne's direction.  There is

no claim in the Renicks' original complaint, therefore, for which the Speraus can be held liable

on a theory of passive negligence.[7]

Because the original complaint alleges no passive acts, a reasonable jury could not

determine that the Speraus were only passively negligent and grant indemnity on that basis.  *See*

*Max's of Camden Yards v. A.C. Beverage*, 913 A.2d 654, 663-64 (Md. App. 2006).

Accordingly, the court will grant the Agents' motion to dismiss with respect to the Speraus'

claims for indemnity against them.

### 2.  *Speraus' Contribution Claim*

The Maryland Uniform Contribution Among Joint Tort-Feasors Act (UCATA), Md.

Code Ann. §§ 3-1401 *et seq.*, provides that "[t]he right of contribution exists among joint tort-

feasors."  Md. Code Ann. § 3-1402(a).  Joint tort-feasors are "two or more persons jointly or

severally liable in tort for the same injury to person or property, whether or not judgment has

been recovered against all or some of them."  *Id.* § 3-1401(c).  There is a tort-based right to

contribution when joint tort-feasors are held liable and one tort-feasor has paid more than her *pro*

*rata* share of the damages.  *See Lerman v. Heeman*, 701 A.2d 426, 445-46 (Md. 1997).  Because

"contribution from a third party defendant is predicated on his or her direct liability to the

plaintiff," there is no right of contribution where the plaintiff has no right of action against the

third party defendant.  *Kelly v. Fullwood Foods, Inc.*, 111 F. Supp. 2d 712, 715 (D. Md. 2000)

---

[7] With respect to the Renicks' claim of intentional misrepresentation against the Speraus, "it is
widely held that indemnification is not available to intentional or grossly negligent tortfeasors."
*Pyramid*, 505 F. Supp. at 597.

(citing *Montgomery Cnty. v. Valk Mfg. Co.*, 562 A.2d 1246, 1249 (Md. 1989)).  It is important to note, however, that a "right of contribution rests upon the common liability of the wrongdoers for the loss notwithstanding the fact that the liability of each wrongdoer may rest on a different ground." *Fischbach & Moore Int'l Corp. v. Crane Barge R-14*, 476 F. Supp. 282, 287 (D. Md. 1979) (applying principles of contribution in maritime law).

The Renicks sue the Speraus pursuant to the RLPHRA, which provides for joint and several liability for any persons who knowingly violate its provisions.  42 U.S.C. § 4852d(b)(3).  The Renicks claim knowing RLPHRA violations only on the part of the Speraus, but the Speraus in their amended third-party complaint contend the Agents also violated the act.  (*See* Compl. ¶ 25; Am. Third-Party Compl. ¶¶ 55-57.)  If the fact-finder determines that both the Speraus and the Agents have violated the RLPHRA, they will be joint tort-feasors.  *See* Md. Code Ann. § 3-1401(c).  If judgment is entered against the Speraus, they may be able to claim a right of contribution from the Agents.  *See Lerman*, 701 A.2d at 445-46.  Accordingly, the Agents' motion will be denied with respect to the Speraus' claims for contribution.

### 3. *Speraus' RLPHRA Claim*

The Speraus claim the Agents violated the RLPHRA and its accompanying regulations.  (Am. Third-Party Compl. ¶¶ 55-57.)  RLPHRA requires real estate agents who contract with sellers to ensure compliance on behalf of the sellers.  42 U.S.C. § 4852d(a)(4).  It also provides for joint and several liability among knowing violators of its provisions.  *Id.* § 4852d(b)(3).

In this case there is a disputed issue of fact with respect to whether the Speraus gave Coyne documentation of renovations completed on the house and related lead paint discovery.  The Speraus allege that they gave documentation to Coyne and instructed her to read it and provide it to the Renicks.  (Sperau Aff. 2 ¶¶ 16-17.)

Coyne claims the Speraus never indicated to her any knowledge of lead paint on their property and that she did inform them of their obligations with respect to potential lead hazards in the house.  (Coyne Aff. ¶¶ 4, 8-12.)  The Agents point out that "the Speraus affirmatively indicated on the forms that they filled out that [the Agents] provided the Speraus with the information that the Speraus now claim they never received."  (Agents' Mot. ¶ 21.)  The court does not find, however, that Daniel Sperau's potentially inadvertent signing of the "certification of accuracy" of Coyne's initialed statement that she had informed the Speraus of their RLPHRA obligations renders this fact undisputed.  (*See* Disclosure Statement at 1-2.)

The assignment of liability with respect to any alleged violation of RLPHRA depends on who, if anyone, among the Speraus and Coyne had knowledge of the existence of lead paint in the house.  Accordingly, liability under the RLPHRA cannot be decided on the present record, and the Agents' motion for summary judgment with respect to the RLPHRA claim in Count IV of the Speraus' third-party complaint will be denied.

The Speraus claim that the Agents have failed to address or rebut within a reasonable amount of time the assertions of fact set forth in Daniel Sperau's second affidavit.  (Speraus' Opp. at 27.)  They, therefore, request that the court consider these facts as undisputed and grant summary judgment for them as the non-moving party under Rule 56.  *See* Fed. R. Civ. Pro. 56(e)-(f).  The court considers the Speraus' request and declines to enter summary judgment in their favor because there is a genuine issue of material fact, as explained above.

### D.  Speraus' Motion to Dismiss ELTG's Crossclaim

ELTG asserts crossclaims against the Speraus for indemnification (Count I), indemnification due to their "active and primary" role in causing the Renicks' harm (Count II), and for contribution as a joint tort-feasor (Count III).  The Speraus move to dismiss ELTG's

crossclaim.  They argue that ELTG's indemnity claims must be dismissed because a party alleged to have committed "active negligence" cannot claim indemnity and that ELTG's contribution claim must fail because ELTG and the Speraus are not joint tort-feasors.  The legal standards for indemnity and contribution as enumerated with respect to the Speraus' third-party complaint above apply likewise to the similar issues in ELTG's crossclaim.

### 1.  ELTG's Indemnification Claims

The court first analyzes the active or passive nature of cross-plaintiff ELTG's acts as alleged in the Renicks' original complaint.  *See Pyramid*, 606 F. Supp. at 596 ("The determination of whether a tortfeasor's negligence is active or passive must be made by referring to the plaintiff's complaint against the defendant seeking to implead the third party.").  The Renicks' sole claim against ELTG is negligent misrepresentation based on its alleged omission from its disclosures to the Renicks that there was a tax lien against the property for unabated, known lead hazards.  (Compl. ¶¶ 46-52.)  Because of the active nature of ELTG's misrepresentation as alleged in the original complaint, it does not appear that ELTG would be able to seek indemnity from the Speraus.  Accordingly, the Speraus' motion to dismiss will be granted with respect to ELTG's claims for indemnity.

### 2.  ELTG's Contribution Claim

In their motion to dismiss ELTG's crossclaim for contribution, the Speraus claim that they and ELTG are not joint tort-feasors.  The Renicks sue both the Speraus and ELTG for negligent misrepresentation with respect to the sale transaction.  (Compl. ¶¶ 37-52.)  Although the Renicks assert liability against the two defendants based on separate acts, they allege that the acts of both defendants caused the same harm or loss, i.e. that the Renicks purchased a house with lead hazards.  *See Fischbach & Moore*, 476 F. Supp. at 287.  If both the Speraus and ELTG

are found liable to the Renicks, they will be joint-tort feasors.  *See* Md. Code Ann. § 3-1401(c).

If judgment is entered against ELTG, they may be able to claim a right to contribution from the

Speraus.  *See Lerman*, 701 A.2d at 445-46.  Accordingly, the Speraus' motion will be denied

with respect to ELTG's claims for contribution.

**Conclusion**

For the foregoing reasons, the Speraus' motion to dismiss or to stay will be denied; the

Renicks' motion to strike ELTG's reply with respect to that motion will be denied as moot; the

Agents' motion to dismiss will be granted as to indemnification and denied as to contribution

and the RLPHRA; and the Speraus' motion to dismiss ELTG's crossclaim will be granted as to

indemnification and denied as to contribution.  A separate order follows.


March 29, 2013  
Date

/s/  
Catherine C. Blake  
United States District Judge