IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| BRADEN RENICK, *et al.* | * | |
| | * | |
| v. | * | Civil No. CCB-12-1627 |
| | * | |
| DANIEL SPERAU, *et al.* | * | |

* * * * * *

## MEMORANDUM

Plaintiffs Braden and Rebecca Renick claim damages resulting from lead hazards discovered in a house they purchased from defendants Daniel and Melissa Sperau. Defendant ELTG, LLC, a licensed producer of title insurance, performed the title search on the property and conducted the settlement for purchase. The Renicks filed this suit against the Speraus alleging violations of the Residential Lead-Based Paint Hazard Reduction Act, intentional misrepresentation, and negligent misrepresentation, and against ELTG alleging negligent misrepresentation. Now pending is ELTG's motion for summary judgment[1] on the negligent misrepresentation claim and request for a hearing. (ECF No. 53.) The Renicks have filed a memorandum in opposition to ELTG's motion. (ECF No. 55.) No hearing is necessary. *See* Local Rule 105.6. For the following reasons, ELTG's motion for summary judgment will be denied.

## Background[2]

In the summer of 2011, the Renicks purchased a home located at 411 Woodlawn Road, Baltimore, Maryland from the Speraus. (Pls.' Opp.[3] at 1, ECF No. 55; Def.'s Mem. at 1, ECF

---

[1] Although some of the headings in ELTG's memorandum suggest the Renicks' claims should be dismissed, the title, legal standard, and other language indicate that the motion is one for summary judgment, and so the court treats it as such. (*See* Def.'s Mem. at 7, 9, ECF No. 53-1.)
[2] The court's previous opinion outlines the procedural and factual background of this suit in more detail. (*See* Opinion at 1-5, ECF No. 56.)

1

No. 53-1.) The Speraus had owned the home since at least 2005. (Pls.' Opp. at 1.) The Renicks and the Speraus executed a contract of sale in February 2011. (Def.'s Mem. at 2.)

On June 16, 2011, the Renicks requested that ELTG provide "[f]ull copies of any judgments or liens" on the property. (Title Request Form, Mot. Summ. J., Ex. E, ECF No. 53-7.) A Baltimore City lien certificate issued on June 20, 2011, and valid until August 4, 2011, listed three items for the address 411 Woodlawn Road: a real property lien marked paid on December 17, 2010, in the amount of $11,204.56; a metered water lien marked paid on May 19, 2011, in the amount of $121.06; and a lead paint violation with a phone number to call for more information. (Lien Certificate at 1, Mot. Summ. J., Ex. F, ECF No. 53-8.) ELTG then produced a title report noting: "Judgments: N/F" and "Taxes & Other Liens: #27-14-4935-003; PAID $11,204.56 on 12-17-10."[4] (Title Report, Mot. Summ. J., Ex. G, ECF No. 53-9.) ELTG also conducted the settlement for the sale of the property on July 15, 2011. (Pls.' Opp. at 2; Def.'s Mem. at 1, 2.)

As sellers of the property, the Speraus completed a disclosure statement affirming that they had no knowledge of lead-based paint or lead-based paint hazards in the house and had received no reports or records pertaining to such hazards. (Def.'s Mem. at 2-3.) The Renicks allege that the Speraus received two letters from the Baltimore City Health Department, dated March 31, 2006, and April 15, 2009, notifying them that there were lead hazards on the property.

---

[3] The Renicks' memorandum in opposition to ELTG's motion for summary judgment (ECF No. 55) is relevant to the current opinion, while the court's previous opinion refers to other memoranda filed by the Renicks in opposition to motions filed by other parties.

[4] Two dates appear on the title report, which do not align with the factual timeline. (*See* Title Report, Mot. Summ. J., Ex. G, ECF No. 53-9.) The date of January 1, 2002, preceding all relevant action in this suit by nearly ten years, appears to be printed by an improperly calibrated fax machine. The handwritten "through date" of June 10, 2011, however, is closer to the time ELTG would have issued the report but precedes the June 20, 2011, issuance of the lien certificate. The parties may be able to explain this discrepancy in further proceedings.

(Pls.' Opp. at 1-2.) They also claim that the Speraus failed to abate the lead hazards on the property and that Baltimore City entered a written notice of the outstanding violation in the municipal records, which constituted an encumbrance on the title. (*Id.* at 2.) On or about August 31, 2011, the Renicks, who had inhabited the house, received a "violation notice and order to remove lead hazard" from the Baltimore City Health Department listing the lead hazards identified in the March 31, 2006, notice. (*Id.*)

## Legal Standard

A court may properly award summary judgment when the record shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). A genuine dispute about a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When reviewing a motion for summary judgment, the court must look at the facts and inferences drawn therefrom in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

While the burden is on the moving party to demonstrate the absence of any genuine issue of material fact, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970), a "mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). The non-moving party may not merely rest upon allegations or denials in pleadings but must, by affidavit or other evidentiary showing, set out specific facts showing a genuine issue remains for trial. Fed. R. Civ. P. 56(c)(1)(A). A court should enter summary judgment where a non-moving party fails to make a sufficient showing to establish the elements

essential to the party's claim and on which the party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

If there is insufficient evidence for a reasonable jury to render a verdict in favor of the non-moving party, there is no genuine issue of material fact, and summary judgment may be granted. *See id.* at 248. Summary judgment is inappropriate, however, if there exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250; *see JKC Holding Co. v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

**Analysis**

ELTG argues in its motion for summary judgment that it is not liable to the Renicks for negligent misrepresentation as a matter of law. ELTG also asserts the affirmative defenses of contributory negligence and assumption of the risk claiming the Renicks cannot recover damages even if ELTG were found liable.

**A. Negligent Misrepresentation**

To establish the claim of negligent misrepresentation under Maryland law, a plaintiff must show that: (1) the defendant, owing a duty of care to the plaintiff, negligently asserted a false statement; (2) the defendant intended that his statement would be acted upon by the plaintiff; (3) the defendant had knowledge that the plaintiff would probably rely on the statement, which, if erroneous, would cause loss or injury; (4) the plaintiff, justifiably, acted in reliance on the statement; and (5) the plaintiff suffered damage proximately caused by the defendant's negligence. *Griesi v. Atl. Gen. Hosp. Corp.*, 756 A.2d 548, 553 (Md. 2000).

ELTG argues that the Renicks' negligent misrepresentation claim must fail because ELTG did not owe a duty to the Renicks to disclose the lead paint hazards on the property and

did not make any false assertions to them; the Renicks' reliance on ELTG's statement was unjustified; and ELTG's actions did not proximately cause the Renicks' damages.

A title agent owes a duty to exercise reasonable care in examining a title and producing a report. *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 60 A.3d 1, 17-18, 21 (Md. 2013); *see also Lewis v. Long & Foster Real Estate, Inc.*, 584 A.2d 1325, 1330 (Md. App. 1991). Although a title agent's liability is often enforced in a negligence action, the duty can be limited in scope by the language of a contract. *Lewis*, 584 A.2d at 1330-31 (acknowledging title agent's duty and dismissing complaint that failed to show details of contract with title agent).

ELTG was retained to conduct a title search of the property at 411 Woodlawn Road and to provide "[f]ull copies of any judgments or liens." (Def.'s Mem. at 2; Title Request Form at 1.) Therefore, ELTG had a duty to exercise reasonable care in searching for and reporting "any judgments or liens." The parties dispute whether there actually was a lien on the property at the time of the title search. ELTG claims that the lead paint violation listed on the lien certificate was not a lien on the property. The Renicks claim that the violation on the lien certificate satisfies the definition of a lien in the Baltimore City Code (*See* Building Code §§ 118.1(1)1(a)-(b), 118.2(2), 118.3; Property Maintenance Code § 301.4; Baltimore Health Code § 5-206) and that ELTG's report, therefore, falsely stated that no lien existed.

ELTG asserts that the Renicks were not justified in relying on its title report because ELTG had no duty to disclose non-lien violations on the property. As noted previously, ELTG had a duty to exercise reasonable care in researching and reporting "any judgments or liens" on the property. The question of whether the Renicks' reliance on ELTG's title report was reasonable, therefore, is a mixed question of law and fact, which need not be finally decided at this time. The Renicks are entitled to discovery as they claim in the affidavit of Joseph B. Espo.

(Espo Aff. 2-3, Pls.' Opp., Ex. A, ECF No. 55-1.) Similarly, ELTG's argument that its title report was not the proximate cause of the Renicks' damages depends on the mixed question of law and fact of whether it "conveyed the status of title as requested." (*See* Pls.' Opp. at 9.) Accordingly, this court will not grant summary judgment to ELTG on the Renicks' negligent misrepresentation claim.

## B. Contributory Negligence or Assumption of Risk

ELTG contends that the Renicks' negligent misrepresentation claim is barred by the doctrines of contributory negligence and assumption of risk. In Maryland, both contributory negligence[5] and assumption of the risk are a complete bar to recovery by a plaintiff. *Prudential Sec., Inc. v. E–Net, Inc.*, 780 A.2d 359, 377 (Md. App. 2001).

To show contributory negligence, a defendant must demonstrate by a preponderance of the evidence that the plaintiff either performed or failed to perform an act that cooperated with the defendant's negligence in causing the plaintiff's injury without exercising the ordinary standard of care a reasonable person in the plaintiff's position would exercise. *Bd. of Cnty. Comm'rs v. Bell Atl.-Md., Inc.*, 695 A.2d 171, 180 (Md. 1997). In order to establish the defense of assumption of risk, a defendant must show that the plaintiff: (1) had knowledge of the risk of the danger; (2) appreciated that risk; and (3) voluntarily confronted the risk. *Prudential*, 780 A.2d at 378 (citing *ADM P'ship v. Martin*, 702 A.2d 730, 734 (Md. 1997)).

Ordinarily, a jury must determine whether a plaintiff was contributorily negligent or assumed the risk. *See Menish v. Polinger Co.*, 356 A.2d 233, 238 (Md. 1976) (noting that for the

---

[5] Although the Renicks properly point out that the validity of the contributory negligence doctrine in Maryland is currently before the Maryland Court of Appeals (Pls.' Opp. at 5 n.5; *see Coleman v. Soccer Ass'n of Columbia*, 41 A.3d 570 (2012) (granting certiorari on the issue)), this court need not delay its decision in this case pending the Court of Appeals decision. *See Harrison v. Montgomery Cnty. Bd. of Educ.*, 456 A.2d 894, 905 (1983) (recognizing the common law rule of contributory negligence and declining to judicially abrogate it).

court to find contributory negligence as a matter of law "the act (or omission) so relied on must be distinct, prominent and decisive, and one about which reasonable minds would not differ in declaring it to be negligence"); *Thomas v. Panco Mgmt. of Md., LLC*, 31 A.3d 583, 588 (Md. 2011) ("[W]hether the plaintiff had knowledge and appreciation of the particular risk at issue is ordinarily a question for the jury, 'unless the undisputed evidence and all permissible inferences therefrom *clearly* establish that the risk of danger was *fully* known to and *understood* by the plaintiff.'") (quoting *Schroyer v. McNeal,* 592 A.2d 1119, 1123 (Md. 1991)) (emphasis in *Thomas*).

In this case, reasonable minds could differ on the question of whether the Renicks performed any distinct, negligent act; indeed, a jury could find that the Renicks exercised an ordinary standard of care in relying on ELTG's report without performing an independent investigation. Similarly, the parties dispute whether the Renicks knew and understood the risk of lead hazards on the property. ELTG alleges that the Renicks understood the risks because they had an "arsenal of information" based on the facts that they (1) executed their sale contract before the Speraus made their non-disclosures, (2) waived their right to inspect the property, and (3) failed to conduct a Google search for lead-paint violations. Contrary to what ELTG suggests, however, a reasonable jury could conclude that the Renicks' actions indicate they did not fully know and understand the risks associated with buying the property, even if they were aware that the house was built in 1922.

Because the elements of ELTG's contributory negligence and assumption-of-risk defenses depend on disputed facts or inferences therefrom, neither issue is ready for resolution on the current record.

## Conclusion

For the foregoing reasons, ELTG's motion for summary judgment will be denied. A separate order follows.

May 14, 2013              /s/
Date                      Catherine C. Blake
                          United States District Judge